Dejanu, also known as Peter Dejanu. This is a complicated case which raised a large number of issues. I'd like to focus on three, the question of the constructive amendment or fatal variance on Count 8, the question of the criminal forfeiture on Count 15, and then, if there's time, some of the evidentiary issues. But if the claims are raised, I'd be happy to address those. Count 8 alleged that Mr. Dejanu committed bank fraud in a very specific way. Count 8 was directed towards the loan application of Prasert Tengkransakti, which was found in the loan files of the International Bank of Singapore. This pertained to the refinance loan of 690 Market Street. That refinance occurred in 1994. The loan application was the same loan application that was the subject of Counts 1 and 2, which had been submitted in regard to the 1700 California Street loan. The charges in the indictment alleged three specific yes, Your Honor? I'm sorry, I thought you were going to ask a question. No, I had nothing. Go ahead. Okay. There were three specific charged misrepresentations, all of which were based on the loan application. The first was that there was a misstatement as to the partner's income. The second was a misstatement as to the assets owned, and the third is the value of the assets owned. But the evidence at trial undercut the notion that any one of those three misrepresentations was material. The officer from the International Bank of Singapore, who was responsible for recommending and investigating the loan, testified that he really didn't consider the loan application for two reasons. Well, probably three. One, it was stale. It was old, and the information was not current. Two, he was going to rely on other sources for the repayment of the loan. And three, he had an independent investigation of Prasert Tengkransakti, which revealed that Mr. Tengkransakti was a, quote, unquote, substantial individual. Instead, he testified that there were other misrepresentations which, if he had known them, he would have considered those to be material. Actually, they really weren't a misrepresentation as much as an omission, namely the fact that Mr. Desjardins was a principal in the 690 Market Street building as opposed to just the personal representative of Tengkransakti. The problem with the evidence was heightened. Well, first of all, once the jury went into deliberations, it was apparent, it became apparent that they really didn't understand what the elements of bank fraud and the – well, it doesn't so much matter on the other counts because Mr. Desjardins wasn't convicted of them, but they were not clear as to what they had to find in order to convict Mr. Desjardins of bank fraud. They came back. They said – they sent a note and they asked for clarification on which counts were tied directly to a loan application. In other words, they asked whether they could consider only the misrepresentations in the loan application, which was the charge, or whether they could consider other, verbal or otherwise, to quote them directly, misrepresentations. The judge did not limit the supplemental instruction. The judge refused to say that the misrepresentations were linked to the Tengkransakti loan application and instead gave a general instruction, which is quoted in my brief. I'm not going to re-quote it here. And I'm having trouble understanding. If you could just succinctly say exactly what is the variance that you're contending occurred. Well, Your Honor, I guess I should say it's either a constructive amendment or a variance. All right. Well, exactly what is the problem? The problem is – Just let me see if I can understand at least some of it. The indictment alleged that misrepresentations were made in three respects. All right? The evidence showed that there were misrepresentations in those same respects. So what's the problem? The problem is that in order to convict Mr. Desjardins of bank fraud, the jury had to find that one of those misrepresentations was material. All right. I understand that problem. And I understand the instruction problem, which I think is somewhat interesting. But I don't understand how this turns into a variance problem. Well, there's a variance because the evidence that supported the conviction, which was magnified by the instructions and by closing argument, supported a conviction based on an uncharged misrepresentation. What was that? That was that Mr. Desjardins was not a principal in the 690 Market Street building. Chong, the IBS bank officer, testified that if he had known that Mr. Desjardins was a principal as opposed to merely a partner – I mean, merely the personal representative of Tanktron Sochti, it would have affected his decision-making. Okay. He said that, but the instruction was directed at the actual misrepresentations. And when the jury came back confused, they were sent back to the actual misrepresentations. So you may have a sufficiency of evidence problem and you may have an instruction problem, but I don't understand how you have a variance problem. Well, the variance problem or the constructive amendment problem is that actually the – yes, it's correct. At the end, the judge finally did, after the second jury note, the judge finally did refer them back to the original bank fraud instruction. But he never reminded the jury that they had to find that one of the charged misrepresentations was material. He said, and in light of the previous confusion, that kind of an instruction was necessary. There was – he – as a – I know it's in my brief, but what he said initially was – so initially, the jury comes with this note and they're referring to verbal or otherwise instructions, and he says, well, he said, you have to find one of these misrepresentations and you can consider all of the evidence. So he doesn't limit it to the loan application. Then the jury comes back and they're still having trouble. They can't reach a verdict on 1, 2, 7, and 8. And I'm sorry. If you'll give me a moment, I think I can find the point there. It's that he – when he – then he finally did refer them back and he said, well, you have to find each of the four elements of bank fraud as to one of the misrepresentations. That's correct. And I think that's your point. But he never reminded them about materiality. He never instructed them on materiality. Right. I find the materiality instruction issue sort of interesting, and maybe you could just address that. I'd be happy to address that. This I'm really having a hard time with. Well, I'm afraid I – I don't know that I'm going to be able to satisfy you, Your Honor. I think the problem is, is that under the law of the Ninth Circuit, a constructive amendment or a variance occurs in two ways, one when there's evidence presented of a different, you know, a different underlying factual or legal theory, and two when there's an alternative theory presented and the instructions and the evidence allow conviction of that. And here, I mean, I did argue – obviously, I did brief the question of sufficiency of the evidence, but I think the stronger argument is that there was either a constructive amendment or a fatal variance. So ultimately, your problem is that the materiality element was left out of the file instruction. That's one of the problems. I think ultimately, the problem is that the evidence undercut, severely undercut the – the structure. But that doesn't seem to me to set up a variance problem. I mean, the evidence can support lots of theories, but the question is what theory went to the jury. And unless there is some reason to believe that the wrong theory went to the jury as opposed to there might have been another theory that if they were – had been instructed on, they might have found on, I don't see that you have a variance problem. But there is, Your Honor. And the reason we know there is, is because of these jury notes. In addition, there was, at least in closing – one of the final things that the prosecution mentioned in closing rebuttal was that Mr. Desjardins lied to Ian Chong about his involvement in the building. And given that argument, it's possibly – it's not surprising that there was jury confusion. You know, if the Court had come back and instructed the jury, as the defense requested and said, yes, it's limited to the loan application, I agree, we would probably not have this argument. But the judge did not do that. But there was a materiality instruction, wasn't there? Yes, there was. That's one of the issues in the brief. The materiality instruction, although that's – would you like me to discuss that issue or would you – would you like me, I mean, in the brief? Complete your thoughts here and then we'll move on to the materiality issue. Okay. Well, yes, there was a materiality instruction, which, of course, was objected to by the defense, largely because it defined materiality as something, as a statement that would have been important to a reasonable banking institution, which detracted the jury's attention from the question of the actual decision-maker in this case. Now, in terms of – in terms of the constructive amendment and the variance argument, it's very – the materiality instruction posed an additional problem, because there was no information or evidence suggesting that at least the International Bank of Singapore was a corrupt bank. It was not a corrupt bank. It was a regular bank. That's not the case for the Bangkok Metropolitan Bank. But the – but by focusing the jury's attention on a quote, unquote, hypothetical reasonable banking institution, that really didn't allow them to consider evidence from Ian Chong that he would have granted the loan even if the true factual facts about Mr. Teng Tronsakdi's assets and income had been contained in a loan application, which he did testify. For example, he testified that if he had known that Mr. Teng Tronsakdi's net worth was about $20 million instead of $50 million, he probably would have still granted the loan. But doesn't Ninth Circuit law support the reasonable person instruction? Well, I think it's not clear. I think it's an open question. The Ninth Circuit law actually supports the notion in two recent cases, Chen and McKenna, which were discussed in the brief, that the materiality focuses on the actual decision-maker. And the – you know, the Supreme Court, the – what courts have relied on in approving this hypothetical reasonable person instruction is this footnote in Netter. And at, you know, at I guess at best, you might say that that could be an alternative definition of materiality, which obviously the government argued was the appropriate one to be used in this case. But I think equally it was not appropriate in this case, because while it might have been – I mean, I understand the government's concern about the whole corruption argument, but at least with regard to Count 8, the effect of the reasonable banking instruction was to focus the jury's attention on the evidence, not on the evidence from Ian Chong, who was the decision-maker, the primary judge. And I think that's what the government is arguing, but I don't think that that is a problem. I think he was the primary decision-maker. He had the authority to recommend or not. And in fact, when you look at the credit memo relied on by the government that's in the excerpt, it's clear that they focus exactly on what he says. The first thing, this is why it's a good loan. So, I mean, is he the ultimate – well, he had to submit it for approval. I mean, I think that's normally how banking institutions work. But he certainly was the primary force behind the refinance loan. He had the authority. He was the person they called to testify. What the other people on the committee thought is fairly speculative. The only evidence there is, is this credit memo. If there are further questions on this subject, I would like to move on to the forfeiture. But if the Court has other questions, I don't want to. All right. The question of the forfeiture on Count 15 is an interesting one. The statute under which the criminal forfeiture had provides for the forfeiture of proceeds that – or funds that constitute or derive from the proceeds of the criminal offense. There are different statutory subdivisions in 982, and each of them defines what is forfeitable differently. We have to assume under principles of statutory construction that those terms were chosen for a reason, not randomly. In this case, the instructions provided for forfeiture not just of monies that were proceeds or derived from proceeds, but of traceable – monies that were traceable. And that is a fundamental flaw. If the Court had to make a decision on the forfeiture, it would have to make a decision   And that's the harmless error problem here. I mean, weren't these – these funds, as I understand it, were the money that was obtained for the sale of the building. Is that what they – right? So what could be more direct than that?  In other words, if there's a difference between derived and traceable, it's that traceable will – will support a longer line of transactions. In other words, if somebody sells the building and then buys a house and then sells the house and buys a boat and then sells the boat to somebody else, that's a different question. Yes. The boat counts. That would be traceable. Whereas derives – But it would be a deficit. Yes. Whereas derives is the original proceeds for the sale, and that's what we've got here. Now, I don't know – your other point, it seems to me, would be quite a separate point. That is, what do we mean by the proceeds? But what does that have to do with derived or traceable? Well, I guess it depends. I see your point. I'm not sure that it's that – I guess I don't see it as cut and dried separately that way. The monies in this case, it's – I think the question is, is it the proceeds of the violation versus the proceeds of the building? Or is it derived from – I mean, certainly, yes, you're right. The – you could – it's the money came from selling the building, so it's derived from the building. But that's a distinct point from whether it's from the violation. And at the time, as I – I mean, the facts are set forth in the brief, but – The question, presumably, was they bought a building they wouldn't otherwise be able to buy, so they had an asset they weren't supposed to have. I mean, that's the theory, okay? Well, actually, that's not correct in this case, though, because in this case, the building was purchased. They already owned the building. All right. They kept the building. They wouldn't otherwise have been able to keep. That's not even clear, if they wouldn't have been able to keep it. They refinanced it because they were able to do so on favorable terms, and they saved about a million dollars. In other words, they reduced their debt level. So at most, perhaps, that is the – that, I would argue, that that is what's derived from or traceable to the offense, because that – in other words, the reduction in debt. You're basically saying, all right, I don't know. It's not a question of is it traceable to the building. It is traceable. I mean, clearly, you're right on that. But is it traceable to the violation? And here the violation was not – I think you're right that the point would be harmless if this were a purchase loan, but it's a refinance. And in fact, the effect of the refinance was to reduce the debt. But the purchase led to the proceeds to refinance, and then the sale of the building led to the proceeds from the sale, correct? Well, yeah, eventually, when it was finally sold. All right. So being derived from or traceable to, in light of the facts in this case, is a distinction without a significant difference. Would you agree? I'm not sure. I'm not sure of that. I think that the – again, we go back to the violation. Is it traceable to the violation? Is it derived from the violation, or is it derived from the sale? And the violation is the refinance. I mean, sure, it eventually led to the sale, but this was not a – the – I mean, in this case, at least with 690 Market, the loan was paid off. It wasn't – it wasn't as – I mean, the building – it's a complicated situation. The building went into involuntary bankruptcy. But that's neither here nor there. I guess I'm not really understanding your question. Could – would you mind repeating it? I'm just following up on Judge Berzon's point that we're looking here at derived from and traceable to. The criminal offense resulted from the false loan, the bank loan application. Correct. Money was derived from the false bank loan application. That money was used, and that way it was subsumed into the building itself. Thereafter, the building is sold because the building is the security interest for the money that was used otherwise, or whatever. The building was actually later sold. So isn't the building – the sale of the building traceable to or derived from the bad loan? I guess – yeah, that's – I guess my answer would be the same. No, because, again, the question is the relation to the violation. And the building at the time, the sale of the proceeds – the proceeds of the building is attributable to the preexisting equity in the building. Again, at best, you have the gain, the reduction in debt from the refinance. If there aren't further questions, I'd like to reserve a few minutes for rebuttal. Thank you. Good morning, Your Honors. Hartley West for the United States. I'm an assistant U.S. attorney here in San Francisco, and I'll be responding to the issues raised by Mr. DeGeneu on appeal. The first issue that Mr. DeGeneu addresses is the variance with regard to Count 8. As the Court seems to have recognized, the district court directly referred the jury back to the indictment which alleged the three particular false statements. It's undisputed that it was proved that those three false statements were, in fact, false. And moreover, contrary to what Mr. DeGeneu appears to be arguing, the judge did remind the jury that materiality was an instruction, was an element. And I would refer the Court to Appellant's Excerpt of Record, page 200, in which the Court stated the statements or promises were material, that is, they would reasonably influence a bank to part with money or property. Not only did the jury – did the judge show the indictment to the jurors and reiterate the specific misrepresentations alleged, as well as the elements of the offense, the judge also gave the jurors copies of the indictment to take back into the jury room with them. So I don't believe there is any reasonable argument that there is a variance here. What this argument seems to really be going to is a sufficiency of the evidence argument, that Mr. DeGeneu is contending that the government did not provide sufficient evidence that the alleged three misrepresentations were indeed material. Was there any evidence presented as to the use of these loan applications to make a complete file to be something that the bank examiners would look at to determine whether this was a good loan or not? Was there any evidence about that? Your Honor, the United States had the testimony of a senior examiner at the Federal Reserve named Jaby Lowe, whose responsibility it was to supervise foreign banks. Mr. Lowe testified that the Federal Reserve would go to inspect the branches of these foreign banks to make sure that the papers were in order, and specifically, he also testified that a reasonable banking institution would find it material if there was a misstatement of income on a loan application. Similarly, he testified that a substantial misstatement as to assets would be material. So that is the testimony, that's the evidence that was before the jury with regard to a reasonable banking institution. Mr. DeGeneu's argument here really is going to reliance. He's saying that Mr. Chong said that he did not, in fact, consider the false loan application because it was stale and for other reasons. However, the facts that were before the jury indicated that Mr. Chong said he did need the approval of the head office in Singapore in order to approve the refinance loan. In fact, Mr. Chong prepared a credit memorandum for that approval, and his recommendation explicitly cites the false assets that had been included in Mr. Tengkeren-Sakdi's false loan application. In addition to that, one thing that the Jury's argument here really is going to reliance  on is the fact that Mr. Tengkeren-Sakdi did not, in fact, consider the false assets   assets that had been included in Mr. Tengkeren-Sakdi's false loan application. It may not matter in this case, but the reasonable person materiality standard seems problematical to me in some circumstances. I mean, what if you had a situation where the bank said, the bank form said, you know, we're collecting a lot of information here for our records, for survey purposes, but we really don't care what your assets are as long as they're over X amount of money, and the person filled it out. And suppose that this was a reasonable bank would have thought otherwise. Why should that violate the statute? Well, in this case, Your Honor, the fact that the bank said that this case may not matter, but I'm trying to figure out, first of all, whether the instruction was proper to begin with. Your Honor, we argue that the instruction was, in fact, proper because it was an acceptable alternate definition as recognized in Nader and in other cases. Right. And Nader says this sort of in passing, and our case law is a little confused, and so trying to figure out, if I thought it was an open question, why would the answer, why would this be the right answer? Well, it may not be necessary in the hypothetical that Your Honor is providing, and it may be that the definition provided in Gowden would suffice there and not create any error. However, it was the facts of this case that did require the reasonable banking institution. I know, but what I'm trying to say is that suppose you had a situation in which a reasonable bank would have done one thing, but, in fact, the applicant knew that this bank didn't care about that, that it wasn't material to this bank. Why should that be a violation of the statute? Why should the reasonable person standard be correct in a situation where it would be prejudicial? Well, I don't think that there's any ground to think that it would be error in such a circumstance. If this may be getting to the Court's question, what Mr. Lowe, the Federal, the senior examiner at the Federal Reserve, testified is that with regard to banks generally, their loans are Federally insured. That can affect the investors. And with regard to branches of foreign banks, because of their interaction with domestic banks, inappropriate transactions can also affect and contaminate the U.S. financial system. So it's for that policy purpose, I think, that a reasonable banking institution instruction would not be error, unless, but I think this is slightly different. Kagan. The Federal Reserve has certain requirements that the banks have to follow in, in, with regard to loan applications. They do, and they inspect and they do. So those are going to be material. Let's assume that anything that the Federal Reserve wants, needs for its regulation is going to be material. The question is whether there's anything else that – and does this come within that category? That may be why this doesn't matter in this case, because either instruction would have come out the same way here. Well, what the Court should be looking at here is whether the types of statement, the false statements, had a natural tendency to influence or were capable of influencing the bank. And misstatements, particularly of the sheer magnitude of $30 million, more than double misstatement, would certainly have the capacity and a natural tendency to influence a bank. And you're saying it doesn't matter whether it's this bank or some other bank, so we can forget about the reasonable bank problem. With regard to the International Bank of Singapore, as Mr. Desjardins concedes, there's no argument that that bank was corrupt. And so that basically would be a proxy for a reasonable bank. So any error in that case with regard to Count 8 would certainly have been harmless. If the Court has any further questions regarding the sufficiency of evidence regarding Count 8, I'm happy to address them. Otherwise, I'll move on further to the materiality argument. In this case, the Court did instruct, consistent with a proffered instruction by the United States that was modeled after the Eleventh Circuit materiality instruction, excuse me, definition of materiality in a bank fraud case, and that's the Swearengin case. In Swearengin, the Court said that representation is material if it would be of importance to a reasonable banking institution in deciding whether or not to act as the defendant wished. That's exactly what the Court modeled its instruction after here. And that is consistent with the footnote in Nader that recognizes alternate definitions and specifically was recognized in the 2000 case, Kenrick, which is a First Circuit case involving a corrupt bank, and has also been recognized in the Ninth Circuit's recent decision, well, 2002 decision in Watkins, which involved criminal misbranding statute. But it did approve the objective reasonableness standard, quoting the same language as had been quoted in Nader. And then, of course, the Johnson decision says that these are acceptable at alternate definitions. It sounds like the Court understands that the facts here were, with the Bangkok Metropolitan Bank being a corrupt bank, are what prompted the necessity of such an instruction in this case. If there are no further questions, I would turn to the forfeiture argument. In their brief, Mr. Desjeneux argues that traceable to really means attributable to, which here, I think it was Judge Huston who said that any error, there's really it's a distinction without a difference in this case. What the Court should be looking at is what were the proceeds of Mr. Desjeneux's bank fraud for the count of conviction, which in what Mr. Desjeneux is arguing about is count 8. The bank fraud conviction was premised on the false loan application, and the direct absolute most direct proceeds of that false loan application and bank fraud conviction was the $6.5 million refinance loan. That's the most direct proceeds here. It is irrelevant that some of that went back to pay the bank under the Bulwar case. There's no credit for repayment of a loan. The most direct proceeds are the 6.5 million. What the government asked for in its forfeiture count was less than that amount, was 3.8 million, which is, you know, obviously subsumed in the 6.5 million. Above and beyond that, there would be the profits from the sale of the property, but that doesn't even need to be considered here because the 6.5 refinance loan that is so directly obtained from the false loan application already exceeds the forfeiture amount. Now, Mr. Desjeneux did not have an opportunity to address any of the other issues that had been in the brief. If the court wishes me to, I'm happy to. Otherwise, I would submit. Thank you. Just briefly, Judge Fletcher, you asked if there was evidence on papering up the file. That was there was evidence presented on that as to the Bangkok Metropolitan Bank, but not the International Bank of Singapore. I just wanted to clarify that. Well, would that general principle carry over to the other bank? I don't think so. The notion was, I mean, I think you could have an argument could have been made and perhaps was, I mean, I can't remember if it was specifically argued, but that the certainly the Federal Reserve examiner testified that, you know, that a false loan application was material whenever received, which I think that testimony conflicts might conflict with the legal definition of materiality. But that was relevant to the notion that, well, this application was submitted late to paper up the file to cover up with the Federal Reserve. However, conduct of the bank varies as to whether they've got a bad loan there. I was a director of a bank long enough to know that when there was a bad loan in the bank, all sorts of conduct took place. Well, that may be the case. But the thing is, well, in terms of I just wanted to make that factual point to answer that question. I actually wanted to turn briefly to the question raised about reliance versus materiality. We agree I would agree that reliance is not an element, but the fact that there was no reliance is evidence of non-materiality. There's a I mean, there's a difference between saying that this is not an element of the offense versus this is concrete evidence that the the misstatements in question were not material. And the notion that because there's a discrepancy in the money, I mean, I agree this is a lot of, you know, a misrepresentation of $30 million is a lot, but this loan would have been granted anyway, and not because it was a fraudulent bank. Counsel, counsel, isn't it reasonable for wouldn't a reasonable jury possibly believe Mr. Lowe's testimony that the false loan application would have influenced the bank's decision, a reasonable bank's decision, over Mr. Chong's testimony who said that it didn't matter that the loan application was false when there's evidence that Mr. Chong's bank was corrupt? Well, the jury might have believed that. Well, there was no evidence that Mr. Chong's bank was corrupt, Your Honor. The only evidence about corruption was to the Bangkok Metropolitan Bank, which was a different loan. So, but to answer your question, yes, of course, a jury could have believed the Federal Reserve testimony, but there were problems with the Federal Reserve examiner's testimony. He testified that any misstatement, no matter how small, was material. He testified that it wouldn't matter if you misstated, if you had a billion dollars in assets but overstated it by $3 billion, it would, and the loan would have been granted anyway. That was still material. So it's just not, it's not a, it's, like I'm saying, it's not that simple. Thank you very much. Thank you. Thank you, counsel. The case of United States v. Dejeuner is submitted. We will go on to the next case.
judges: B .Fletcher, Berzon, Houston